**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

QA1 Precision Products, Inc.,                                          Civil No. 04-23 (DWF/SRN)

        Plaintiff,

v.                                                                                              **MEMORANDUM**
                                                                                        **OPINION AND ORDER**

Impro Industries USA, Inc. f/k/a JB USA, Inc.;
Impro Industries (Wuxi) Co., Ltd. f/k/a JB
Group, Inc., n/k/a Impro Foundry (Wuxi) Co.,
Ltd.; Wuxi Viking Impro Manufacturing Co.,
Ltd; Wuxi Impro-Bees Machinery Co., Ltd.;
Wuxi Klimer Precision Machinery Co. Ltd.;
Wuxi Viking General Machinery Co. Ltd.;
Wuxi Impro Tooling Co., Ltd.; Impro
International (Hong Kong), Ltd.; Ina Wang
a/k/a Hui Wang, and Lu Jian Qui (a/k/a Reb
Lu),

        Defendants.

---

Michelle K. Dove, Esq., Raphael T. Wallander, Esq., and Richard J. Nygaard, Esq., Rider Bennett LLP, counsel for Plaintiff.

Charles C. Moore, Esq., and Christopher T. Shaheen, Esq., Dorsey & Whitney, counsel for Defendants.

---

**Introduction**

The above-entitled matter is before the undersigned United States District Judge pursuant to a Renewed Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, to Transfer Venue brought by Defendants Wuxi Viking Impro Manufacturing Co., Ltd., Wuxi Impro-Bees Machinery Co., Ltd., and Impro Industries (Wuxi) Co., Ltd. (collectively "the Chinese companies") and

Defendants Lu Jianqiu, Ina Wang, and Impro USA (collectively "the Defendants").[1]  Plaintiff QA1 Precision Products, Inc. ("QA1") opposes the motion and brings its own Motion for Partial Summary Judgment requesting that this Court find that the Defendants are alter egos or successors in interest to one another and that Defendants have breached their fiduciary duties to QA1.  For the reasons set forth below, QA1's Motion for Partial Summary Judgment is denied and Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, to Transfer Venue is granted in part and denied in part.

## Background

**I.     The Parties**

Plaintiff QA1 is a corporation located in Lakeville, Minnesota.  QA1 specializes in manufacturing, assembling, or otherwise supplying rod ends, spherical bearings, shock absorbers, springs, investment castings, sand and permanent mold castings, forgings, fabricated parts, rubber molded parts, specialty machined components and assemblies, and components thereof.

Defendant Impro USA is a corporation incorporated under the laws of the state of California.  Impro USA's principal place of business is Diamond Bar, California.  Impro USA is a U.S. distributor and supplier for precision investment castings, sand castings, permanent mold castings, precision machining parts, stainless steel ball bearing products, and rod end and spherical bearings manufactured in China by Wuxi Viking Impro Manufacturing Co., Ltd., and Wuxi Impro-Bees Machinery Co., Ltd.

---

[1] Defendants Wuxi Viking Impro Manufacturing Co., Ltd., Wuxi Impro-Bees Machinery Co., Ltd., Impro Industries (Wuxi) Co., Ltd., Impro USA, JB USA, and JB Group will be collectively referred to as "the Corporate Defendants."

Impro USA does not rent, own, or maintain a business office in Minnesota, but it does business with Minnesota companies. Impro Industries USA is entirely owned by Wuxi Viking Impro Manufacturing Co., Ltd.

The Chinese companies are corporations incorporated under the laws of the People's Republic of China. The principal place of business of these corporations is China. Wuxi Viking Impro Manufacturing Co., Ltd., manufactures investment castings. Wuxi Impro-Bees Machinery Co., Ltd., manufactures precision machining parts, stainless steel ball bearings, and rod end and spherical ball bearings and components. Impro Industries (Wuxi) Co., Ltd., manufactures sand castings and investment castings.

Defendant Lu Jianqiu is a citizen of the People's Republic of China. He currently resides in California. He is the President of Impro USA and Chairman of the Board of the Chinese companies. From 1992 to 1998 he was President of JB Group, Inc. ("JB Group") and JB USA, Inc. ("JB USA").

Defendant Ina Wang is a citizen of the People's Republic of China. She is a permanent resident of the United States. Although she currently resides in California, QA1 alleges she resided in Minnesota from 1996 to 1999. Ina Wang is the Vice President of Impro USA. She was employed by JB Group from 1993 to 1996. She also served as the Vice President of JB USA until March 1999.

JB USA was incorporated in Minnesota in 1996. JB USA was established to serve as a distributor and supplier of rod end bearings, spherical bearings, ball bearings, bearing components, cam follower components, forging castings and investment castings manufactured by Wuxi Viking Impro Manufacturing and Wuxi Impro-Bees Machinery Co. JB USA was wholly owned by JB Group. JB Group was a Chinese corporation owned by the Jiangyin Wenlin Town Industrial Co.

## II.     Contract Between QA1 and JB Group/JB USA

On November 5, 1996, QA1 entered into an Exclusive Sales Representative Agreement and an Exclusive Supply & Distribution Agreement ("the Contracts") with JB Group and JB USA. The Exclusive Sales Representative Agreement covered the sale of investment castings, forgings, and other related products. The Exclusive Supply & Distribution Agreement covered the exclusive supply to QA1 of rod ends, spherical bearings, and related products. Lu Jianqiu executed the Contracts in his capacity as President of JB Group.

QA1 claimed the Contracts were breached and made a demand for arbitration on July 7, 1997. On June 16, 1998, an arbitration order in favor of QA1 against JB Group and JB USA was issued. In September 1998, JB Group's interest in Wuxi Viking Impro Manufacturing Co., Ltd., was evaluated by a Chinese accounting firm. Wuxi Impro Tooling Co., Ltd., a company owned by Lu Jianqiu, purchased JB Group's interest in Wuxi Viking Impro Manufacturing Co., Ltd.

On March 2, 1999, the Hennepin County District Court entered the arbitration award against JB Group and JB USA. In August 1999, JB Group filed for bankruptcy with the court in Jiangyin City, China. In December 2000, JB Group's bankruptcy proceedings were completed. Defendants assert that all applicable Chinese laws were complied with during JB Group's bankruptcy and that notice of JB Group's bankruptcy was published in the local Jangyin City newspaper.

Defendants assert that when JB Group became insolvent, it was no longer able to provide financial support to JB USA. Defendants contend that JB USA ceased operations in March 1999. Defendants claim that JB USA was taken over and liquidated by the Liquidation Committee of Jiangyin Beilin Group Company. Defendants assert that all of JB USA's

belongings were transferred to a storage facility in Minnesota. Defendants assert that rent has not been paid for the storage facility space since April 1999. As a result, Defendants do not have any knowledge of the current status of the items put into storage.

QA1 asserts that in March 1999, Christina King, QA1's Executive Vice President, witnessed a semi-truck at JB USA's office loading JB USA's inventory and office furnishings. Ms. King was unable to identify what was being taken from the office.

QA1 brought this suit alleging that the Defendants are either successors in interest to, or alter egos of, JB Group and JB USA. QA1 claims that the Corporate Defendants received a fraudulent transfer of assets from JB Group and JB USA. QA1 asserts that Lu Jianqiu and Ina Wang breached their fiduciary duties to QA1. QA1 also contends that the Defendants have misappropriated and converted trade secrets.

Defendants made a Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, to Transfer Venue. Defendants also brought a Motion to Quash Service and Dismiss for Lack of Proper Service. In response, Plaintiffs moved for Partial Summary Judgment. The Court denied Defendants' Motion to Quash Service and Dismiss for Lack of Proper Service and reserved judgment on the two remaining motions until jurisdictional discovery in the matter had been completed.

On January 10, 2005, Defendants noticed the Court that they would be renewing their Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, to Transfer Venue. However, Defendants did not request a hearing on the matter at that time. Several months later, Defendants requested a hearing on their motion. The Court determined that additional oral argument on the matter was not necessary and the parties were given the opportunity to provide the Court with additional

briefing.

## Discussion

I.    **Motion for Partial Summary Judgment**

    A.    **Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inference that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

B.   **Alter Ego Liability / Piercing the Corporate Veil**

Courts consider whether they have jurisdiction over a party before looking to a suit's substantive allegations. However, QA1 alleges that Defendants are alter egos or successors in interest to one another and that a finding in the affirmative on either issue would have an effect on the jurisdictional issues in this suit.[2] Accordingly, the Court will consider the alter ego and successor liability issues before determining whether it has personal jurisdiction over Defendants.

QA1 asserts that Defendants are alter egos of one another, and therefore, that Defendants are vicariously liable for the judgment QA1 obtained against JB USA and JB Group.[3] In the Eighth Circuit, state law governs piercing the corporate veil. *Stoebner v. Lingenfelter,* 115 F.3d 576, 579 (8th Cir.

---

[2]   A nonresident corporation may be subjected to jurisdiction in a state by virtue of the activities of its subsidiary company in a state, so long as the companies are operated so that one corporation is a mere instrumentality or alter-ego of the other corporation. *Gibson Trucking, Inc. v. Allied Waste Indus., Inc.,* No. 01-710 (ADM/AJB) 2001 WL 1640095 (D. Minn. Nov. 2, 2001) (citing *Zimmerman v. American Inter-Ins. Exchange,* 386 N.W.2d 825, 828 (Minn. Ct. App. 1986)).

[3]   QA1 asserts that alter ego liability and the doctrine of piercing the corporate veil are two different legal concepts, each with a separate and distinct legal test for their application. In contrast, Defendants contend that the two concepts are intertwined with a finding that one party is the alter ego of another merely satisfying the first-prong of the piercing test.

The Court agrees with QA1 insofar as courts use the terms alter ego liability and piercing the corporate veil to describe different factual situations. Alter ego liability is the term generally used by courts to refer to a situation in which a party seeks to set aside the separate corporate existence of affiliated corporations where one corporation is so organized and controlled as to be merely an instrumentality of its affiliate. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.,* 519 F.2d 634, 638 (8th Cir. 1975). In contrast, the doctrine of piercing the corporate veil is generally discussed by courts where a party seeks to hold a shareholder liable for corporate obligations. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn. 1997). While the Court recognizes the differences between the two legal doctrines, the Court finds Defendants' position on this issue more in line with Minnesota law. Accordingly, the Court will analyze the issue as such.

1997). In determining whether to pierce the corporate veil, a Minnesota court must: (1) analyze whether the corporation functioned as an instrumentality of the principals a party is attempting to reach by piercing the corporate veil; and (2) determine whether injustice or fundamental unfairness would occur if the corporate veil were left intact. *Id.* (citing *Victoria Elevator Co. v. Meriden Grain Co., Inc.*, 283 N.W.2d 509, 512 (Minn. 1979)).

A court must consider a number of factors in determining whether the first prong of the corporate veil test has been satisfied, including: (1) insufficient capitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of debtor corporation at the time of the transaction in question; (5) siphoning of funds by dominant shareholder; (6) nonfunctioning of other officers and directors; (7) absence of corporate records; and (8) existence of the corporation or corporations as merely a facade for individual dealings. *Victoria Elevator,* 283 N.W.2d at 512.

QA1 alleges that each of the Defendants are alter egos of one another and that these entities are owned and organized by a small group of individuals, including Lu Jianqiu, so as to avoid claims brought by QA1 and other wronged business partners. In support of its allegation that the Defendants are alter egos of one another, QA1 points to the following facts: (1) all of the Corporate Defendants produce the same type of ball bearing and investment casting products; (2) all of the Chinese Defendants are headquartered in China but direct their business towards the U.S. market; (3) all of the Chinese Defendants operate out of the same location in China; and (4) several of the Corporate Defendants share rights in one U.S. patent. In addition to QA1's substantive allegations, QA1 also asks the Court to deem the Defendants alter egos of one another in light of the fact that the Defendants have failed to respond to jurisdictional discovery requests.

Defendants contend that the doctrine of piercing the corporate veil is inapplicable in this case. Defendants point to the fact that JB USA was a wholly-owned subsidiary of JB Group, and that JB Group was a collectively-owned corporation whose registered owner was Jiangsui Jiangyin Wenlin Town Industrial Co., Ltd., a Chinese corporation that is not a party to this case. Defendants assert that any asset transfers between the Corporate Defendants were legitimate and that some of the asset transfers at issue in this case occurred as part of JB Group's bankruptcy proceeding. Defendants also contest QA1's allegations regarding discovery violations.

The Court finds that QA1 has not met its burden of establishing that the corporate veil should be pierced with regard to the Defendants.[4] QA1 has presented evidence that a small group of individuals owned and operated the Corporate Defendants. However, common ownership or shared corporate officers among the Corporate Defendants are not, by themselves, a sufficient basis upon which to find alter ego liability. *Phil Crowley Steel Corp. v. Sharon Steel Corp.,* 702 F.2d 719, 722 (8th Cir. 1983) (holding that even 100% ownership is not enough by itself to find a parent corporation and its subsidiary identical).

QA1 has also submitted evidence of transactions between the Corporate Defendants at a time when JB USA and JB Group appear to have been insolvent, but have submitted no evidence that any of the asset transfers were for less than full and fair value. Despite QA1's allegations, it has failed to show that illegal asset transfers took place between the Defendants or that the Corporate Defendants were operated solely for the benefit of Lu Jianqiu or Ina Wang. Therefore, the Court finds that QA1

---

[4] As a preliminary matter, the Court finds that the discovery issues raised by QA1 have been properly resolved by the Magistrate Judge and, therefore, will play no role in this Court's consideration of the jurisdictional issues.

has failed to establish that Defendants are alter egos of one another or that piercing the corporate veil is appropriate in this case.

C. **Successor Liability**

In *J.F. Anderson Lumber Co. v. Myers,* 206 N.W.2d 365, 368-69 (Minn. 1973), the Supreme Court of Minnesota set out the test for successor liability. In that case, the court stated:

> Generally, where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the settling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

In this case, QA1 claims that Lu Jianqiu and Ina Wang have fraudulently transferred business activities, customers, and assets away from JB USA and JB Group and to the Corporate Defendants. However, the only asset transfers that QA1 can direct to the Court's attention are the sale of JB Group's interest in Wuxi Viking Impro Manufacturing Co., Ltd., to Wuxi Impro Tooling Co., Ltd., and the distribution that took place when JB Group's assets were liquidated by the Chinese bankruptcy court.

As previously stated, QA1 has come forward with no evidence that the sale of the interest in Wuxi Viking Impro Manufacturing Co., Ltd., was for anything less than full and fair value or that the Chinese bankruptcy court's liquidation of JB Group's assets was contrary to the law of the People's Republic of China or this country. In fact, the contrary appears to be the case as documents in the record support Defendants' assertions that full and fair value was paid to JB Group for its interest in Wuxi Viking Impro Manufacturing Co., Ltd. (Declaration of Lu Jianqiu, ¶ 23-25, Exs. A-C.) The

10

Court has also reviewed the documents prepared by the liquidation committee and the Chinese bankruptcy court and finds nothing in those documents that would cast into doubt the propriety of those proceedings. (*See* Affidavit of Lihong Song, Document #20, Bankruptcy Liquidation Report.) Accordingly, the Court finds that the Defendants are not successors in interest of JB Group or JB USA.

### D.   Breach of Fiduciary Duty

In addition to moving for summary judgment on the successor in interest, piercing the corporate veil, and alter ego liability issues, QA1 has moved for summary judgment asking the Court to find that Lu Jianqiu breached his fiduciary duties by transferring assets from JB Group to Wuxi Impro Tooling Co., Ltd., while JB Group was insolvent. Minnesota law provides that the transfer of corporate assets by an insolvent corporation to its officers or directors constitutes a breach of their fiduciary duties. *Snyder Elec. Co. v. Fleming,* 305 N.W.2d 863, 869 (Minn. 1981). In addition, Minnesota Statute § 513.44 provides that a transaction in which a debtor transfers its assets to a third party with the intent to hinder, delay, or defraud its creditors without receiving full and fair value for the assets is invalid.

As previously discussed, this Court has been provided no evidence establishing that the transfer of assets from JB Group to Wuxi Impro Tooling Co., Ltd., was improper or for less than fair and full value. Documents provided to the Court show that JB Group's interest in Wuxi Viking Impro Manufacturing Co., Ltd., was evaluated by an accounting firm and that the interest was then sold to Wuxi Impro Tooling Co., Ltd., at fair market value. (Declaration of Lu Jianqiu, ¶ 23-25, Exs. A-C.) QA1 has not provided evidence that this transfer was improper or that Lu Jianqiu personally benefitted from this transaction. Accordingly, the Court denies QA1's Motion for Summary Judgment as to the breach of fiduciary duty claims.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *See Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).  When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; the court may inquire, by affidavits or otherwise, into the facts as they exist. *See Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).  For the purposes of determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *See Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *See Digi-Tel*, 89 F.3d at 522 (citing *Northrup King*, 51 F.3d at 1387).  However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *See Wessels, Arnold & Handerson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *See Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's contacts must be more than "random," "fortuitous," or "attenuated." *Digi-Tel*, 89 F.3d at 522 (quoting *Burger King*, 471 U.S. at 475). Instead, the contacts must result from the actions of the defendant itself that create a "substantial connection" with the forum state. *Digi-Tel*, 89 F.3d at 522 (quoting *Burger King*, 471 U.S. at 475); *see Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In accordance with the basic principles of federal due process, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3)

the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *See Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995).

The third factor distinguishes between specific and general jurisdiction. *See Digi-Tel*, 89 F.3d at 523, n.4 (citing *Wessels*, 65 F.3d at 1432, n.4). Constitutional law distinguishes between "general" and "specific" jurisdiction cases. *Valspar*, 495 N.W.2d at 411. In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418-19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction requires that defendant has "purposely directed" its activities at residents of the forum, and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

QA1 asserts that both specific and general jurisdiction exist over the Defendants. QA1 contends that Ina Wang resided in Minnesota for a number of years and that Lu Jianqiu visited Minnesota for extended stays on several occasions. QA1 also points to the fact that Lu Jianqiu and Ina Wang: (1) were involved in the creation of JB USA, a Minnesota corporation; (2) served as officers of JB USA; and (3) were involved in the negotiation, and the eventual execution, of the contract between JB Group, JB USA, and QA1. QA1 also asserts that this Court has jurisdiction over Impro USA, because Impro USA conducts business with at least seven Minnesota entities.

QA1 contends that this Court should also find that it has jurisdiction over the Chinese companies. The Chinese companies contracted with JB USA and JB Group to manufacture products for QA1. QA1 claims that the Chinese companies were aware that the products that they were manufacturing were being sold in Minnesota. Further, QA1 contends that the Chinese companies continue to manufacture the same products today in violation of the contract that existed between JB Group, JB USA, and QA1. QA1 asserts that some of the sales of these products takes place in Minnesota.

Defendants assert that Plaintiffs have failed to show sufficient contacts between Defendants and the State of Minnesota. First, Defendants contend that neither Lu Jianqiu nor Ina Wang have ever been residents of Minnesota. Second, Defendants point to the fact that Impro USA was incorporated in California and that it does not own any property, have any employees, or have any assets located in Minnesota. Defendants acknowledge that Impro USA does conduct business in Minnesota, but asserts that those sales account for less than three percent of Impro USA's annual revenue. (Defendants' Supplemental Memorandum of Law in Support of Defendants' Renewed Motion to Dismiss at 2.) Third, Defendants assert that the Chinese companies are not located in this country and that they do not own property or employ anyone in Minnesota. Based on the contacts alleged in the Amended Complaint, Defendants contend that this Court lacks jurisdiction over the Defendants.

The Court finds that it has personal jurisdiction over Lu Jianqiu and Ina Wang. Ina Wang appears to have resided in Minnesota for some period of time and Lu Jianqiu admits to having visited the state for extended stays on a number of occasions. Both Lu Jianqiu and Ina Wang were involved in the formation of JB USA, a Minnesota corporation, and both served as officers in the corporation. In

addition, both Lu Jianqiu and Ina Wang were involved in the negotiations surrounding the contract between JB USA, JB Group, and QA1. Based on the quality and nature of their contacts with the State of Minnesota, the Court finds that it has personal jurisdiction over Lu Jianqiu and Ina Wang.

The Court comes to a different conclusion with regard to the Chinese companies and Impro USA. The Chinese companies are all incorporated in China and none of them have any employees or assets located in Minnesota. Impro USA acts as a distributor and supplier of the products manufactured by the Chinese companies. Although QA1 makes much of the fact that Impro USA sells its products in Minnesota, the Court finds that those sales alone are an insufficient basis upon which to find personal jurisdiction given that Defendants' sales in Minnesota amount to less than three percent of their total sales. (Defendants' Supplemental Memorandum of Law in Support of Defendants' Renewed Motion to Dismiss at 2.) Thus, the Court finds that it has personal jurisdiction over Lu Jianqiu and Ina Wang, but that it lacks jurisdiction over Impro USA and the Chinese companies.

### III. Motion to Transfer

Defendants contend that pursuant to 28 U.S.C. § 1404(a), the Court should transfer this case to the United States District Court for the Central District of California. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Generally, transfer under section 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994). The court considers the convenience of the parties and witnesses

16

and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). In considering these factors, the court must look to the particular circumstances of the case before it. *See Terra Intern., Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

### A. Convenience of the Parties

A presumption in favor of plaintiff's choice of forum exists. *See Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

Defendants are attempting to transfer this case to the district in which Lu Jianqiu and Ina Wang reside and Impro USA maintains its principal place of business. However, Defendants have not provided a basis for such transfer other than to assert that it would be more convenient for them to litigate this matter in California. Based on the fact that a transfer to California would only serve to shift the inconvenience between the parties, the Court concludes that this factor weighs in favor of maintaining the action in Minnesota.

### B. Convenience of the Witnesses

In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See Graff*, 33 F. Supp. 2d at 1121 (citing *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 732 (D. Minn. 1984)).

This case is likely to require testimony from witnesses located in California, Minnesota, and quite possibly, China. Likewise, the costs to these witnesses to appear in either California or Minnesota should be roughly similar. The Court also finds that any documentary evidence sought will be scattered throughout Minnesota, California, and China. Therefore, the Court finds that this factor does not weigh in favor of either party.

### C.    Interest of Justice

A number of considerations which may be relevant in considering this factor are the relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgement. *See Graff*, 33 F. Supp. 2d at 1122.

The Court finds that Defendants have made a showing that the interests of justice weigh in favor of the transfer of this suit to the United States District Court for the Central District of California. QA1 chose Minnesota as the forum in which to bring this suit. However, this Court has jurisdiction over only a limited number of the Defendants. If this Court were to retain this suit, a second action would have to be brought against Impro USA and the Chinese companies in California. In addition to promoting judicial economy, this Court finds that any judgment against the Defendants would be easier to satisfy in California given Defendants' lack of assets located in Minnesota. Based on the Court's examination of these considerations, the Court finds that the interests of justice weigh in favor of the transfer of this suit.

After reviewing all of the transfer factors, the Court finds that Defendants have met their burden of proving that transfer of this suit to the United States District Court for the Central District of

California is appropriate. Although a plaintiff's choice of forum is due great deference, the Court finds that maintaining this action would create the need for a second action in California where personal jurisdiction over all of the Defendants is likely to be found. Accordingly, the Court grants Defendants' Motion to Transfer.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff QA1 Precision Products, Inc.'s Motion for Partial Summary Judgment (Doc. No. 46) is **DENIED.**

2. The Renewed Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, to Transfer Venue (Doc. No. 2) brought by Defendants Wuxi Viking Impro Manufacturing Co., Ltd., Wuxi Impro-Bees Machinery Co., Ltd., Impro Industries (Wuxi) Co., Ltd., Lu Jianqiu, Ina Wang, and Impro USA is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    a. The Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 2) is **GRANTED** as to Defendants Wuxi Viking Impro Manufacturing Co., Ltd., Wuxi Impro-Bees Machinery Co., Ltd., Impro Industries (Wuxi) Co., Ltd., and Impro USA.

    b. The Renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 2) is **DENIED** as to Defendants Lu Jianqiu and Ina Wang.

    c. The Motion to Transfer Venue (Doc. No. 2) to the United States District Court for the Central District of California is **GRANTED**.

Dated:  August 4, 2005             s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   Judge of United States District Court